IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT A. WALDNER,                              Case No. 3:13-cv-02047-AA
                                                    OPINION AND ORDER
            Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

            Defendant.

_____

Kathryn Tassinari
Brent Wells
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
      Attorneys for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

John C. Lamont
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, Washington 98104
Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Scott Waldner brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for supplemental security income benefits ("SSI") under Title II of the Act.  For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

Plaintiff filed for SSI on April 29, 2010.  Tr. 140-43.  His application was denied initially and on reconsideration.  Tr. 88-95.  On July 31, 2012, a hearing was held before Administrative Law Judge ("ALJ") Richard A. Say, wherein plaintiff was represented by counsel and testified, as did a medical expert ("ME") and a vocational expert ("VE").  Tr. 30-59.  On August 30, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act.  Tr. 7-23.  After the Appeals Court denied his request for review, plaintiff filed a complaint in this court.  Tr. 1-4.

## STATEMENT OF FACTS

Plaintiff, who was born on November 3, 1970, was 37 years old on the alleged onset date of disability and 41 years old at the time of the hearing.  On April 1, 2010, he protectively filed his application for SSI benefits, alleging disability as of December 7, 2007, due to autism and depression.  Tr. 10, 140-43, 161-67; see also Pl.'s Br. 1.  Plaintiff graduated high school and completed some college course work.  Tr. 217, 274, 285.  He was previously

employed at a cabinet making company, a landscaping company, a mill, a fast food restaurant, and a recycling facility. Tr. 42, 44 217-18. While working as a cabinet maker from 1994 to 1999, plaintiff was convicted of first degree sexual abuse and was incarcerated from 2000 to 2006. Tr. 217-18. He then worked at the landscaping company for approximately one year but stopped working after he was incarcerated for a probation violation. Tr. 42, 217.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

Page 3 - OPINION AND ORDER

can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## DISABILITY EVALUATION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner considers whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

Next, the Commissioner evaluates whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 416.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must determine that the claimant can perform other work that exists in significant numbers in the

national and local economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R.
§ 416.920(g).  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process
outlined above, the ALJ found that plaintiff had not engaged in
substantial gainful activity since the application date.  Tr. 12.
At step two, the ALJ determined that plaintiff had a severe mental
impairment with various diagnoses of bipolar disorder; autism
spectrum disorder; pervasive developmental disorder, and Asperger's
disorder, arising from the same series of alleged symptoms.  Tr.
12-13.  The ALJ also determined that plaintiff had non-severe
impairments of left ankle pain and left shoulder pain.  Tr. 12.  At
step three, the ALJ found that plaintiff's impairment or
combination of impairments did not meet or equal the requirements
of a listed impairment.  Tr. 14.

Because plaintiff did not establish disability at step three,
the ALJ continued to evaluate how plaintiff's impairments affected
his ability to work.  The ALJ found that plaintiff had the residual
functional capacity ("RFC") to perform "a full range of work at all
exertional levels but with nonexertional limitations":

> He is limited to performing unskilled work and routine
> tasks requiring no public interactions and no more than
> superficial interaction with co-workers with no close
> cooperation or coordination.  He will need reminders
> every two hours or so to stay on task.

Tr. 15.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work as defined by 20 C.F.R. § 416.965. Tr. 17.  At step five, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform despite his impairments, such as groundskeeper, landscaper, industrial cleaner, and laundry worker. Tr. 18.  Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.  Tr. 18-19.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting the medical opinion of Peter Taylor, D.O.; (2) failing to credit the full opinions of Heather Bee, Psy.D., and John Nance, Ph.D.; (3) finding plaintiff not credible; (4) failing to address the lay evidence regarding plaintiff's work at a recycling center; and (5) failing to meet his burden of proving that plaintiff retains the ability to perform "other work" in the national economy.

I.   Medical Opinion Evidence

Plaintiff first argues that the ALJ improperly rejected the opinion of Dr. Taylor, plaintiff's treating physician.  He also contends that the ALJ failed to fully credit the opinions of Drs. Bee and Nance, the examining psychologist and the reviewing psychologist, respectively.  Pl.'s Br. 15-18.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  To reject the uncontroverted opinion of a treating or examining doctor, the ALJ

must present clear and convincing reasons for doing so. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing <u>Lester</u>, 81 F.3d at 830-31).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  <u>Id</u>.

The medical record consists primarily of evidence from Pete Taylor, D.O., plaintiff's treating physician; Heather Bee, Psy.D., who performed a one-time psychological screening evaluation of plaintiff on February 1, 2012; John Nance, Ph.D., an impartial psychological expert who reviewed plaintiff's medical records and objective testing and testified at the hearing; and Thomas Brent Shields, Ph.D., who conducted an intellectual assessment of plaintiff on July 19, 2010.  Tr. 305, 334-57; 284-96; 33-40; 215-24.

Dr. Taylor stated that plaintiff is unable to work full-time independently due to his mental impairments, whereas Dr. Bee opined that despite limitations due to plaintiff's mental impairments, plaintiff is capable of gainful employment.  Dr. Nance opined that based on the variable Global Assessment of Functioning (GAF) scores, the plaintiff's listed impairments — considered both singly and in combination — do not meet or medically equal a listed impairment as set forth in the regulations.  Tr. 14, 33-35.  The ALJ afforded "great weight" to the functional assessment rendered by Dr. Shields, which provided for greater functioning than the ALJ's RFC assessment.  Tr. 16, 215-21.  The ALJ also afforded great weight to the opinions of Dr. Bee and Dr. Nance.

Page 7 - OPINION AND ORDER

A.    Assessment of Dr. Taylor's Opinion

The record indicates that plaintiff sought treatment from Clatsop Behavioral Healthcare beginning in April of 2011, approximately one year after filing his application for disability. Tr. 13, 280. He continued to receive counseling there until June 25, 2012. Tr. 13, 334-38. The record indicates that plaintiff saw Dr. Taylor three times at Clatsop Behavioral Healthcare: on February 27, 2012; March 26, 2012; and June 25, 2012. Tr. 353-58; 347-52; 334-39. On July 2, 2012, Dr. Taylor submitted a letter to plaintiff's lawyer regarding plaintiff's SSI claims:

> As Mr. Waldner's attorney, I would like you to know that I have been his psychiatrist for approximately 9 months, treating both his bipolar disorder and his autism spectrum disorder using aripiprozle 20 mg daily. In regards to his ability to work, my interactions with him have be [sic] consistent with a patient who is unable to work full time independently due to poor attention, mood lability, impulsivity, and slowed cognition, but may be able to work on a reduced schedule with increased supervision to compensate for the above deficits, which are predominately related more to his autism rather than his bipolar and therefore more chronic, perhaps permanent, and less likely to respond to intervention.

Tr. 305.

The ALJ evaluated Dr. Taylor's opinion and determined that it was "deserving of little weight." Tr. 17. He stated that Dr. Taylor's "generalized assessment" that plaintiff was unable to work full time was without "supporting medical signs or etiology rationale." Id. Further, the ALJ noted that "absent proof of additional title or additional board certifications, D.O. Taylor is not a psychiatrist," implying that based on the evidence provided, Dr. Taylor — a doctor of osteopathy — is not a certified mental

Page 8 - OPINION AND ORDER

health professional.  Tr. 17.  The ALJ also found, based on the record, that Dr. Taylor only treated plaintiff once, in June 2012, instead of the nine months Dr. Taylor said he had been acting as plaintiff's "psychiatrist."  Tr. 17, 305.  However, the record indicates that Dr. Taylor saw plaintiff three times. Tr. 334-39, 347-52, 353-58.

The ALJ also noted that Dr. Taylor seemed to rely significantly on the plaintiff's anecdotal claims, including an alleged diagnosis of Asperger disorder made at Lovejoy Hospice in Grants Pass. Tr. 17, 340.  However, the record contains no medical records from the Grants Pass medical facility; rather, a response to a records request stated that plaintiff was never a patient there.[1]  Tr. 17, 214.  Accordingly, the ALJ found Dr. Taylor's July 2012 statement "deserving of little weight."  Tr. 17.

It is well established than an ALJ may afford less weight, even where a treating physician is involved, to opinions that are not accompanied by explanations or references to clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Additionally, "[a]n opinion of disability premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted." Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); see also Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (claimant's provision of misinformation,

---

[1]The lack of medical evidence to support plaintiff's alleged diagnostic medical history, taken in combination with other evidence that will be discussed below, led the ALJ to find plaintiff "not entirely credible."  Tr. 17.

unbeknownst to a doctor, served as a legally sufficient reason for rejecting that doctor's opinion). More weight is afforded "to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted).

The ALJ did not err in affording less weight to Dr. Taylor's opinion, because it is conclusory and lacks evidentiary support. As the ALJ noted, Dr. Taylor, unlike Drs. Bee, Nance, and Shields, is not a mental health specialist; overall, his reports reflect little in the way of psychological counseling or treatment. Though Dr. Taylor wrote that he based his opinion on nine months of treatment, the records show that Dr. Taylor only saw plaintiff three times.[2] The accompanying treatment notes are scant and contain little information beyond recording plaintiff's subjective statements. For example, in February 2012, Dr. Taylor noted that plaintiff "reports that he is doing pretty well, but is getting in arguments with people." Tr. 355. He noted that plaintiff's mood was euthymic, his affect blunted, and his thought process tangential. Tr. 356. He also indicated that plaintiff was stable and did not alter his treatment plan. Tr. 356-57. Notes from the March visit repeat the February notes verbatim. Tr. 349-51. His June 2012 treatment notes vary little in their lack of objective

---

[2]Plaintiff's other visits at Clatsop were with non-physician providers, and at times plaintiff misstates the record by attributing these chart notes to Dr. Taylor. See Pl.'s Reply Br. 8; Tr. 343-46.

medical findings.[3] As such, the ALJ did not err in concluding that Dr. Taylor's opinion was unsupported by objective medical evidence and therefore entitled to little weight.

Moreover, Dr. Taylor's opinion was contradicted by the opinions of Drs. Bee, Nance, and Shields. When the medical evidence is in conflict, the ALJ's conclusions are afforded greater deference. See Bayliss, 427 F.3d 1211, 1216 (9th Cir. 2005) (requiring clear and convincing reasons to reject uncontradicted medical opinions but only specific and legitimate reasons to reject contradicted opinions). Dr. Bee, the examining physician and a licensed psychologist, reported that plaintiff's memory was unimpaired and estimated his intelligence to be between low average and average. Tr. 295. She opined that plaintiff "appears to function best with routine," and that his performance on the testing and his work history "suggest[] that he is capable of gainful employment," despite his mental impairments. Tr. 296. The ALJ afforded Dr. Bee's assessment "significant weight." Tr. 16-17.

The ALJ also considered Dr. Shields's psychological assessment of plaintiff. Tr. 16. In his assessment, Dr. Shields noted that plaintiff scored a 96 on an IQ test. Tr. 16, 219. He observed plaintiff as "somewhat socially awkward but this does not appear to be a severe deficit, likely mild." Tr. 220. He also noted that plaintiff "appear[ed] capable of understanding, remembering, and

---

[3]Dr. Taylor wrote plaintiff "reports that he is doing pretty well, still having trouble with his two 'best' friends who are girls and pay for his cell phone, but things sound stable and he would like to continue his [Abilify] at the current dose. Tr. 336.

carrying out at least moderately difficult instructions," though he would do best with instructions that are "concrete and straightforward." Id. The ALJ afforded this assessment "great weight," as it reported "greater functioning" than the ALJ's RFC assessment. Tr. 16. The ALJ also noted that this greater functioning noted by Dr. Shields "is also very consistent with and supported by the overall medical evidence of record." Id.

The ALJ properly weighed the conflicting medical evidence and provided legally sufficient reasons, supported by substantial evidence, to reject the opinion of Dr. Taylor. The ALJ's evaluation of Dr. Taylor's opinion is therefore affirmed.

B.   Assessment of Dr. Bee's and Dr. Nance's Opinions

Next, plaintiff argues that the ALJ erred in failing to credit the full opinions of Dr. Bee and Dr. Nance; specifically, the limitations in plaintiff's ability to work independently that were identified by Dr. Bee, as well as Dr. Nance's agreement that at times plaintiff had "marked limitations" in his ability to have appropriate interactions with coworkers and supervisors. Tr. 296; 39. However, the ALJ's residual functional capacity finding adequately accounts for the limitations identified by Dr. Bee and Dr. Nance.

Dr. Bee's February 2012 screening evaluation found that despite exhibiting symptoms of Asperger Disorder and depression, plaintiff's "performance on this testing, as well as his work history, suggests that he is capable of gainful employment." Dr. Bee continued:

> However, his ability to understand and remember
> information, focus and attend, and carry out work duties
> may be diminished and inconsistent when situational
> depression symptoms increase and/or when he becomes stuck
> in an obsessional thought pattern. [Plaintiff] will
> likely have difficulty with social interactions in
> employment settings to the extent that others become
> frustrated with the perseverative quality of his
> conversations and seeming inability to redirect himself
> based on social cues . . . . [Additionally], his
> performance will diminish and become less efficient as
> complexity increases and if changes are made to his
> routine.

Tr. 296. Based on these findings, she made the following
recommendations:

> As such, he will benefit from immediate feedback and
> coaching on his work performance as well as some
> mentoring on navigating social relationships in the
> workplace. [Plaintiff] will thrive with routine and
> straightforward instructions and tasks . . . . [H]e would
> benefit from close supervision in a sales position and
> wouldn't do well alone.

Id.

At the July 31, 2012, hearing, Dr. Nance stated that Dr. Bee's
findings regarding plaintiff's social limitations were consistent
with a diagnosis of Asperger disorder. Tr. 39-40. Dr. Nance also
opined that with proper management through medication and
counseling, the "fluctuations" in plaintiff's social limitations
and ability to follow instructions "will probably only be in the
moderate range." Tr. 37-38.

Contrary to plaintiff's assertions, the ALJ gave full
consideration to the opinions of Dr. Bee and Dr. Nance and
incorporated them into his finding of plaintiff's RFC. The ALJ's
finding specifically includes nonexertional limitations tailored to
plaintiff's social and organizational limitations:

Page 13 - OPINION AND ORDER

"[Plaintiff] is limited to performing unskilled work and routine tasks requiring no public interactions and no more than superficial interaction with co-workers with no close cooperation or coordination. He will need reminders every two hours or so to stay on task."

Therefore, I find no error in the ALJ's consideration of Dr. Bee's or Dr. Nance's opinions.

## II. Plaintiff's Credibility

Plaintiff also contends that the ALJ failed to give clear and convincing reasons for finding his complaints regarding the extent and severity of his impairments not credible. When objective medical evidence supports the nature of the symptoms alleged and no evidence of malingering is found, the ALJ may reject a plaintiff's testimony regarding the severity of the symptoms by identifying clear and convincing reasons supported by substantial evidence in the record. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993. The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citations omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, "[the court] may not engage in second-guessing." Thomas, 278 F.3d at 959.

In determining a claimant's credibility, the ALJ may consider:

> (1) ordinary techniques of credibility evaluation, such as
> the claimant's reputation for lying, prior inconsistent
> statements concerning the symptoms, and other testimony
> by the claimant that appears less than candid; (2)
> unexplained or inadequately explained failure to seek
> treatment or to follow a prescribed course of treatment;
> and (3) the claimant's daily activities.

Smolen, 80 F.3d at 1284.

In this case, plaintiff alleged that autism and depression rendered him unable to work.  Tr. 162.  Specifically, plaintiff alleged that these conditions caused problems with talking, memory, concentration, understanding, and following instructions.  Tr. 175. He stated in his Functional Report that "I ramble on when talking . . . I 'space' things off and forget things . . . my concentration is affected due to my comprehesion [sic] not working ... I have trouble understanding things, I need explain things so I can follow instructions." Tr. 175.  At the hearing, plaintiff testified that he cannot work because he cannot focus, explaining that he gets sidetracked by interactions with other people.  Tr. 43.  But he also testified that he was able to work full-time at a landscaping company for at least a year until he was returned to jail for violating his probation.  Tr. 42-43.  He testified that he would be able to do that job now, but he cannot find one like it.  Tr. 43. He worked for four years at a pizza restaurant where he "had a lot of help."  Tr. 44.  Because the manager took time to explain tasks and supervise plaintiff, plaintiff was kept on "as long as I understood what he wanted or he showed me and I showed that I understood." Id.  Plaintiff stated he lost that job because he had to move "for financial reasons."  Id.

Page 15 - OPINION AND ORDER

After considering plaintiff's descriptions of his symptoms and limitations, the ALJ found that claimant's statements concerning the "intensity, persistence and limiting effects of his symptoms are not credible." Tr. 15.  The ALJ stated that since claimant has worked successfully in the past but lost his job because of legal problems, there is "[n]o reason he can't do it now but for his legal history." Id.  The ALJ also concluded that since Dr. Taylor opined that plaintiff might be able to work a reduced schedule because of his poor attention, plaintiff "should be able to do full-time work with appropriate supervision," including occasional reminders to stay on task.  Id.  Plaintiff successfully performed semi-skilled work in the past, and "at the hearing he said he could do that job now."  Id.

Plaintiff argues that the ALJ failed to take into account the extra help plaintiff received at his various jobs to allow him to stay focused.  Pl.'s Br. 13-14.  To the contrary, the ALJ incorporated this testimony into his RFC finding, stating that plaintiff will "need reminders every two hours." Tr. 15.  The RFC also limited plaintiff to unskilled work with no public interactions and no more than superficial interaction with co-workers in order to minimize plaintiff's ability to become distracted by conversations.  Id.

In addition to plaintiff's work history, the ALJ found plaintiff's subjective description of his limitations inconsistent with the objective medical evidence.  See Tr. 16.  In evaluating a plaintiff's credibility, an ALJ considers the extent to which the

[plaintiff's] symptoms "can reasonably be accepted as consistent with the medical evidence and other evidence." 20 C.F.R. § 416.929(a). Thus, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r of SSA, 533 F.3d 1155, 1161 (9th Cir. 2008). Plaintiff alleged that he cannot work due to cognitive limitations, specifically with talking, memory, concentration, and understanding and following instructions. Tr. 175. However, objective medical evidence contradicts his allegation that these functional limitations are disabling. See Tr. 16. Dr. Shields' intellectual assessment testing yielded "no indications of impairment in attention, concentration or memory functioning." Tr. 220. Dr. Bee obtained similar results; she estimated plaintiff's intelligence to be between average and low average and opined that his test performance and past work history "suggests that he is capable of gainful employment." Tr. 295-96. Therefore, the ALJ's reliance on the objective medical evidence was a sufficient basis for rejecting plaintiff's subjective statements.

Finally, the ALJ identified inconsistent statements made by plaintiff as further evidence that plaintiff's allegations are not credible. Tr. 16. In his disability application, plaintiff stated that the "highest grade of school" he completed was "10th grade." Tr. 16, 163. But plaintiff told Dr. Shields that he graduated from high school a year early with a 3.98 GPA, and that he attended one year of college. Tr. 217. The ALJ also noted the lack of medical evidence from the Grants Pass medical facility, where plaintiff

Page 17 - OPINION AND ORDER

alleges he was diagnosed with Asperger disorder. Yet a response to a medical records request stated that plaintiff was never a patient there. Tr. 17, 214. The ALJ reasonably concluded that these inconsistencies indicated plaintiff's reports were not reliable evidence. Even when the evidence is susceptible to more than one rational explanation, "[the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff identifies other errors that he alleges undermine the ALJ's credibility finding, such as the ALJ's discussion of plaintiff's criminal history and plaintiff's statement that he was still able to perform full-time semi-skilled work. Pl.'s Br. 13-15. However, even if the other reasons the ALJ cited were erroneous, the adverse credibility finding remains supported by the valid reasons discussed above. Carmickle, 533 F.3d at 1162-63 (finding that providing invalid reasons for credibility finding was harmless error where the ALJ also provided a valid reason). The court finds that the ALJ's conclusion regarding plaintiff's credibility is supported by substantial evidence and is therefore affirmed.

IV.  Lay Witness Evidence

Plaintiff further alleges that the ALJ erred by failing to address a work activity questionnaire submitted by plaintiff's volunteer supervisor at the recycling center. The questionnaire reported that plaintiff worked with special assistance and lower requirements compared to other workers, and that "his productivity

was said to be 50% or less of that of other employees." Pl.'s Br. 18; Tr. 168-69. The Commissioner concedes that the ALJ should have discussed this evidence but alleges that it was harmless error and should therefore not affect the ALJ's ultimate decision denying disability benefits. Def.'s Br. 18. Plaintiff counters that this was not harmless error because the evidence shows that he requires extra supervision and accommodation in order to be employed. Pl.'s Br. 19.

Reviewing courts "may not reverse an ALJ's decision on account of an error that is harmless." Molina, 674 F.3d at 1111. To determine whether an error is harmful, courts must "look at the record as a whole to determine whether the error alters the outcome of the case." Id. at 1115. An ALJ "may not disregard lay witness testimony about the claimant's limitations if the ALJ has not validly rejected those limitations and their existence would alter the ultimate nondisability determination." Id. at 1116 (internal citations omitted). Nevertheless, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis . . . ." Id. at 1114.

In Robbins v. Soc. Sec. Admin., the court found that the ALJ's failure to discuss a lay witness's corroborative testimony about a claimant's pain testimony - which the ALJ invalidly rejected - was harmful error because the lay witness's testimony (if credited) may have altered the ALJ's disability determination. 466 F.3d 880, 885 (9th Cir. 2006). The Robbins court suggested that the ALJ's failure to discuss the lay witness testimony would have been

Page 19 - OPINION AND ORDER

harmless had the ALJ provided legally sufficient reasons for rejecting the claimant's own testimony.  See id.; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2012) (indicating that it is not harmful error for the ALJ to fail to discuss lay witness testimony where the ALJ has provided sufficient reasons for rejecting similar testimony).

In this case, the court must consider whether the ALJ's failure to discuss the testimony from plaintiff's work supervisor was "inconsequential to the ultimate nondisability determination" in the context of the record as a whole.  See Carmickle, 533 F.3d at 1162; Robbins, 466 F.3d at 885.  Here, though the ALJ did not discuss the work questionnaire, Dr. Shields considered it and quoted it verbatim on the first two pages of the intellectual assessment report.  Tr. 215-16.  The ALJ considered Dr. Shields's report and found plaintiff's functioning to be more limited than opined by Dr. Shields.  Tr. 16.  After considering the entire record, the ALJ also  incorporated limitations in plaintiff's RFC that account for his need for extra supervision and other special accommodations in order to be employed.

Therefore, the ALJ's failure to address the lay evidence specifically did not alter the ultimate nondisability determination.  Accordingly, the ALJ's error was harmless.

V.   RFC Assessment and Step Five Finding

Finally, plaintiff argues that the ALJ's RFC and step five finding are erroneous because they do not account for all of the functional limitations described in the medical opinion evidence

furnished by Drs. Taylor, Bee, and Nance.  The RFC is the maximum a claimant can do despite his limitations.  See 20 C.F.R. §§ 404.1545, 416.945.  In determining the RFC, the ALJ must consider limitations by all of claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.  See SSR 96-8p (1996), available at 1996 WL 374184.  Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2011).

As discussed above, the statements of plaintiff and Dr. Taylor were properly discredited, and the limitations discussed by Drs. Bee, Nance, and Shields were properly considered.  Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  The ALJ's RFC and step five finding are upheld.

### CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this _18th_ day of February 2015.

_____
Ann Aiken
United States District Judge